**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                               :
STANLEY STEPNEY,               :
                               :    Civil Action No. 04-1649 (SRC)
           Petitioner,         :
                               :
      v.                       :
                               :         OPINION
DEVON BROWN, et al.,           :
                               :
           Respondents.        :
_____:
```

**APPEARANCES:**

      STANLEY STEPNEY, Petitioner <u>Pro</u> <u>Se</u>
      #425657
      Northern State Prison
      168 Frontage Road, P.O. Box 2300
      Newark, New Jersey 07114

      MARK P. STALFORD, ESQ.
      Monmouth County Prosecutor's Office
      Director Appellate Section
      71 Monument Park
      Freehold, New Jersey 07728-1789
      Attorneys for Respondents

**CHESLER, District Judge**

      This matter is before the Court on application of petitioner Stanley Stepney ("Stepney") for habeas corpus relief under 28 U.S.C. § 2254.  For the reasons stated below, the petition for habeas relief will be denied for failure to make a substantial showing of a federal statutory or constitutional deprivation.

## I.  PROCEDURAL BACKGROUND

Stepney is presently confined at the Northern State Prison in Newark, New Jersey.  In August 1999, Stanley was convicted of theft by deception in violation of N.J.S.A. 2C:20-4.  He was sentenced to five years probation with an order to pay restitution in the amount of $4,538.00.  On October 26, 2001, a judge held a hearing on Stepney's probation violation for failing to report and provide notice of address change.  The court revoked Stepney's probation and imposed a prison term of 5 years.

In October 1999, Stepney filed a notice of appeal from his conviction and sentence.  In a decision filed on October 15, 2002, the Appellate Division affirmed the conviction, but reversed the probation revocation ruling because Stepney's right to counsel at the probation hearing was violated.  The New Jersey Supreme Court denied certification on January 23, 2003.  Stepney filed this habeas petition on or about January 23, 2004.[1]  The

---

[1]  The habeas petition was not received by the Court until April 8, 2004.  However, giving Stepney the benefit of all inferences related to the date he filed his petition, the Court finds that Stepney "filed" his petition on the date he handed it to prison officials to be mailed to the Court for filing.  See Houston v. Lack, 487 U.S. 266, 276 (1988); Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998)(incorporating the "mailbox rule" for habeas petitions submitted by inmates confined in an institution).  In his traverse to the State's answer, Stepney confirms that he handed his petition to prison officials for mailing on January 21, 2004, and notes an outgoing mail receipt. He later mailed his in forma pauperis application on February 6, 2004, after receiving his certified inmate trust account statement from prison officials.  Accordingly, the Court accepts Stepney's representation, and finds that the petition was filed

2

respondents answered the petition on August 23, 2004.  Stepney
filed a traverse or reply to the State's answer on November 19,
2004.

## II.  FACTUAL BACKGROUND

Federal courts in habeas cases are required to give
deference to the factual findings of both the state trial and
appellate courts.  Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir.
1996)(citing Sumner v. Mata, 449 U.S. 539, 546 (1981)(§ 2254
makes no distinction between the factual determinations of a
state trial court and those of a state appellate court).  See
also 28 U.S.C. § 2254(e)(1).[2]  Accordingly, as the facts of this
case were recounted below, this Court, affording the state
court's factual determinations the appropriate deference under 28
U.S.C. § 2254(e)(1), will simply reproduce the New Jersey
Appellate Division's factual recitation:

> Defendant Stanley Stepney was indicted by a Monmouth County
> Grand Jury for conspiracy to commit welfare fraud, contrary
> to N.J.S.A. 2C:5-2 and 2C:20-4a (count one), and theft by
> deception, contrary to N.J.S.A. 2C:20-4a (count two).  The
> gravamen of the charges was that defendant and his wife, the
> co-defendant, received welfare benefits to which they were

on January 21, 2004, the date on which Stepney handed it to
prison officials for mailing.

[2]   Section 2254(e)(1) provides: In a proceeding instituted
by an application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence.

not entitled.  Tried to a jury, defendant was found not
guilty of conspiracy but guilty of theft by deception.  His
wife was found not guilty. ...

... On August 25, 1997, defendant was arraigned on the
indictment and placed under oath by the arraignment judge.
He testified he was thirty-five years old and had completed
his third year of chemistry at Monmouth College.  Clearly
he could read, write and understand the English language.  He
represented himself in court on three prior occasions and
stated he had "briefly" studied law.  The judge gave
defendant the opportunity to engage counsel, noting that his
wife had a lawyer representing her.  The judge further
explained that defendant had a Sixth Amendment right to be
represented by counsel and that any waiver had to be knowing
and voluntary.  He described the difficulty inherent in
self-representation because of the need for compliance with
the Rules of Court and Rules of Evidence.  Finally, he
advised defendant of the maximum penalties if he were
convicted of the charges.  Following this voir dire the
judge stated:

> I am satisfied that the nature of the court's inquiry
> here of Mr. Stepney has been both searching and
> painstaking.  The court concludes that the intellectual
> capacity of Mr. Stepney is exceptional.  He's proceeded
> to the level of his third year in college with a
> background in the sciences, and has made a freely
> arrived at choice to proceed in the matter as his own
> counsel.

On November 3, 1997, defendant appeared before a different
judge in the Monmouth County Courthouse, at which time he
was advised of his right to apply for pre-trial
intervention.  Mr. Stepney declined to apply and again said
he was executing his right to represent himself.  Defendant
appeared before the same judge on June 15, 1998 and
September 28, 1998 at which time he was again advised as to
his right to counsel and indicated he chose to represent
himself.

(Appellate Division Opinion, decided October 15, 2002, at pp.1,

2, 3-4).

III.  <u>CLAIMS FOR HABEAS RELIEF</u>

Stepney raises the following claims in his habeas petition: (1) the state court decision on petitioner's waiver of trial counsel was arbitrary and unreasonable and violated federal constitutional law; (2) prosecutorial misconduct in cross-examination of petitioner at trial; (3) the state court's exclusion of exculpatory evidence based on an alleged discovery violation was arbitrary and unreasonable and violated federal constitutional law; (4) the state court arbitrarily and unreasonably decided that petitioner could be tried on accomplice liability when there was no notice as to his specific liability as principal or accomplice, and a failure to instruct the jury on accomplice liability; and (5) petitioner was denied compulsory process to call witnesses and present desired defense.

In response to the petition, the State contends that petitioner failed to exhaust his state court remedies with respect to some of his claims.  The State also raises the affirmative defense that the petition is time-barred.[3]  Finally,

---

[3]  The limitation period for a § 2254 habeas petition is set forth in 28 U.S.C. § 2244(d), which provides in pertinent part:

(1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—

   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; ...

5

the State argues that there is no merit to petitioner's claims.
To the extent any of the claims asserted by Stepney in this
petition were not exhausted in state court, this Court may opt to
review such claims, and deny them on the merits pursuant to 28
U.S.C. § 2254(b)(2).  Section 2254(b)(2) provides that "[a]n
application for writ of habeas corpus may be denied on the
merits, notwithstanding the failure of the applicant to exhaust

---

    (2) The time during which a properly filed application
for State post-conviction or other collateral review
with respect to the pertinent judgment or claim is
pending shall not be counted toward any period of
limitation under this section.

    Section 2244(d) became effective on April 24, 1996 when the
Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")
was signed into law.  See Burns v. Morton, 134 F.3d 109, 111 (3d
Cir. 1998); Duarte v. Herschberger, 947 F. Supp. 146, 147 (D.N.J.
1996).  A state-court criminal judgment becomes "final" within
the meaning of § 2244(d)(1) by the conclusion of direct review or
by the expiration of time for seeking such review, including the
90-day period for filing a petition for writ of certiorari in the
United States Supreme Court.  See Swartz v. Meyers, 204 F.3d 417,
419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d
Cir. 1999); U.S. Sup. Ct. R. 13.  Section 2244(d) also provides
that the one-year limitations period shall be tolled during the
time in which a properly filed state PCR petition is pending.  28
U.S.C. § 2244(d)(2).  Thus, pursuant to § 2244(d), evaluation of
the timeliness of a § 2254 petition requires a determination of,
first, when the pertinent judgment became "final," and, second,
the period of time during which an application for state post-
conviction relief was "properly filed" and "pending."

    Here, the judgment of conviction in this case became final
on March 23, 2003.  Therefore, Stepney had until March 23, 2004
within which to file his federal habeas petition.  It appears
that Stepney submitted his petition to prison officials for
mailing on January 21, 2004.  Thus, his petition will be deemed
filed on that date.  See this Opinion, supra, at n. 1.
Accordingly, Stepney's petition is not time-barred.

the remedies available in the courts of the State."  See also
Lambert v. Blackwell, 134 F.3d 506, 514-15 (3d Cir. 1997), cert.
denied, 532 U.S. 919 (2001)(a district court may deny a petition
on the merits, pursuant to 28 U.S.C. § 2254(b)(2), where "it is
perfectly clear that an applicant does not raise even a colorable
federal claim").

IV.   STANDARD GOVERNING REVIEW OF § 2254 CLAIMS

The Court recognizes that a pro se pleading is held to less
stringent standards than more formal pleadings drafted by
attorneys.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v.
Kerner, 404 U.S. 519, 520 (1972).  Thus, a pro se habeas petition
should be construed liberally and with a measure of tolerance.
See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Duarte v.
Hurley, 43 F. Supp.2d 504, 507 (D.N.J. 1999).  Because Stepney is
a pro se litigant, the Court will accord his petition the liberal
construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective
Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas
matters must give considerable deference to determinations of the
state trial and appellate courts.  See 28 U.S.C. § 2254(e);
Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122
S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir.
1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section
2254(d) sets the standard for granting or denying a habeas writ:

> (d)   An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim -
>
> > (1)   resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an
> > unreasonable determination of the facts in light
> > of the evidence presented in the State court
> > proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme
Court explained that subsection (d)(1) involves two clauses or
conditions, one of which must be satisfied before a writ may
issue.  The first clause, or condition, is referred to as the
"contrary to" clause.  The second condition is the "unreasonable
application" clause.  Williams, 529 U.S. at 412-13.  In the
"contrary to" clause, "a federal court may grant the writ if the
state arrives at a conclusion opposite to that reached by [the
Supreme] Court on a question of law or if the state court decides
a case differently than [the Supreme] Court has on a set of
materially indistinguishable facts."  Id.  Under the
"unreasonable application" clause, a federal court may grant the
writ if "the state court identifies the correct governing legal
principle from [the Supreme] Court's decisions but unreasonably
applies that principle to the facts of [the petitioner's] case."

Id. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  Id. at 411.  See also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v. Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims.  First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims.  See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.  Id.  AEDPA prohibits such de novo review.

9

Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable. Id. In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. See Duncan, 256 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

V.  ANALYSIS

A.  Valid Waiver of Representation

Stepney first asserts that his waiver of trial counsel was not made knowingly, and that the trial court failed to conduct an adequate inquiry on Stepney's waiver. Stepney claims that the court failed to uncover that his prior court experience was

10

inadequate; that he lacked the education and experience to represent himself at trial; and that his only experience in the study of law related to personal research on truancy laws and youth drug prevention programs.  Consequently, Stepney asserts that the trial court's decision on the waiver issue was arbitrary and unreasonable and infected the trial proceedings with legal error.  (Petition, Ground One).

This issue was raised on direct appeal and the Appellate Division found as follows:

> We are satisfied that a searching and painstaking inquiry was conducted as to the waiver of right to counsel consistent with State v. Crisafi, 128 N.J. 499, 509-12 (1992).  Defendant's reliance upon our decision in State v. Slattery, 239 N.J. Super. 534 (App. Div. 1990) is misplaced. In that case we found an obvious failure by the defendant to intelligently waive his right to counsel and a total inability to represent himself.  In this case, however, defendant possessed sufficient intelligence and repeatedly waived his right to an attorney and experience from previously representing himself in similar cases.  Moreover, the trial record does not disclose major deficiencies comparable to Slattery.  Defendant was not "left floundering in an uncharted sea."  Id. at 549.  Moreover, defendant's wife was represented by her counsel, and a joint defense was presented.

(Appellate Division Opinion, decided October 15, 2002, at pp. 4-5).

Respondents counter petitioner's claim by noting the lengths to which the state courts went to inform petitioner as to his right to representation, and the dangers of representing himself. Specifically, respondents cite the record as to Judge Coogan's inquiry of Stepney at the August 25, 1997 hearing.  Judge Coogan

11

confirmed that Stepney's waiver of counsel was voluntary, asking whether Stepney understood his constitutional right to counsel, whether he was being forced by anyone to proceed on his own, and whether Stepney's decision was  driven by financial concerns. Stepney responded that he understood his constitutional right, that he was not being forced to proceed without counsel, and that his decision was not compelled by financial straits.  (1T 3:16-21; 4:6-11; 6:12-16).[4]  The court also ensured that Stepney's decision was intelligently made.  Stepney responded that he was 35 years old, educated to the third year of college in chemistry, had studied law "briefly", and had represented himself in court on three earlier occasions.  Stepney also affirmed that he could read, write and understand the English language.  (1T, 2:25-3:9; 4:17-5:5).

---

[4]  The State provided copies of the relevant transcripts as part of the state court record, which are designated as follows:

```
1T    August 25, 1997 transcript
2T    November 3, 1997 transcript
3T    January 5, 1998 transcript
4T    June 15, 1998 transcript
5T    September 28, 1998 transcript
6T    October 5, 1998 transcript
7T    January 11, 1999 transcript
8T    March 9, 1999 transcript
9T    May 25, 1999 transcript
10T   May 26, 1999 transcript
11T   May 27, 1999 transcript
12T   June 2, 1999 transcript
13T   June 3, 1999 transcript
14T   June 4, 1999 transcript
15T   August 20, 1999 transcript
```

Judge Coogan further established that Stepney's waiver of counsel was knowing.  The judge explained the charges to Stepney and the maximum penalties and fines that could be imposed should he be convicted.  The court warned Stepney of the dangers of a lay person representing oneself in a criminal proceeding, and that he would be held to the rules of procedure and rules of evidence that govern trials regardless of his lack of training. Judge Coogan also warned Stepney that it was not the responsibility of the court to advise Stepney on the manner in which his case should be tried.[5]  Finally, Judge Coogan told Stepney that, should he elect to testify at trial, it would be awkward because Stepney would have to both ask and answer his own questions.  (1T, 4:12-6:11).

---

[5]  In his traverse, Stepney argues that had the court explained certain defenses that might have been available to him, such as general defenses of ignorance or mistake, renunciation, and consent, Stepney would have considered retaining counsel. However, this argument ignores the fact that the trial court had no obligation under the law to advise petitioner as to possible defenses and how the case might be tried.  The trial court clearly satisfied its obligation to advise Stepney as to the nature of the charges against him and the maximum penalties and fines to which he may be exposed.  The court also painstakingly warned Stepney of the dangers in representing oneself in a criminal matter without the necessary education and training in the law.  In addition, Stepney argued forcefully in favor of proceeding pro se, and stated that the case was a very simple one where counsel was not necessary.  He stated he had the documents to verify his innocence.  (4T, 4:24-5:3; 6:2-8).  However, Judge Cleary reminded Stepney that the case is not simple and he would do better for himself to retain an attorney.  (4T, 6:9-7:4).

Moreover, the respondent argues that Judge Cleary gave repeated warnings to Stepney during pretrial conferences that Stepney was bound by the rules the court and it did not appear that Stepney was following them.  Judge Cleary also specifically advised Stepney that it was not wise to proceed pro se, and she adjourned a status conference for the specific purpose of giving Stepney the opportunity to retain counsel.  (4T, 5:22-9:18).  Despite this opportunity and all of the recommendations to engage counsel, Stepney declined and continued to represent himself.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The Supreme Court has recognized that the Sixth Amendment also guarantees the right of self-representation, as "the Constitution does not force a lawyer upon a defendant."  Faretta v. California, 422 U.S. 806, 814 (1975).  The rights embodied in the Sixth Amendment "grant[] ... [an] accused personally the right to make his defense."  Id. at 819.  The Court reasoned that although the Sixth Amendment was intended as a protection for the defendant, "thrust[ing] counsel upon the accused against his considered wish, ... violates the logic of the Amendment."  Id. at 820.  Thus, the court cannot require a defendant to accept capable representation if he is adamant about proceeding pro se; rather, the court can only ensure that the defendant fully

14

understands the dangers of proceeding without counsel when he
elects to represent himself.  Id. at 835.  Consequently, the
Sixth Amendment embodies two competing rights because exercising
the right to self-representation means waiving the right to
counsel.  See Buhl v. Cooksey, 233 F.3d 783, 789 (3d Cir. 2000).

> It is axiomatic that a criminal defendant's waiver of a
> constitutional right must be voluntary, knowing and
> intelligent.  Therefore, the constitutional right of self-
> representation in a criminal case is conditioned upon a
> voluntary, knowing and intelligent waiver of the right to be
> represented by counsel.

Buhl, 233 F.3d at 798.  Further, courts should not presume
acquiescence in the loss of such a fundamental right; rather,
they should indulge every reasonable presumption against a waiver
of the right to counsel.  United States v. Stubbs, 281 F.3d 109,
117 (3d Cir.)(citations omitted), cert. denied, 535 U.S. 1028
(2002).  Moreover, because the right to counsel is fundamental to
due process, its denial can never be harmless error.  Id.

Here, in reviewing petitioner's claim on direct appeal, the
state appellate court examined the state court's inquiry as to
Stepney's waiver of counsel under the standards set forth in
State v. Crisafi, 128 N.J. 499 (1992).  The standards in Crisafi
require a searching inquiry to determine whether a waiver of
counsel is knowing and intelligent.  This inquiry must include
informing the defendant of the nature of the charges against him,
the statutory defenses to the charges, and the possible range of
punishment.  Id. at 511.  The trial judge should also inform the

15

defendant of the technical and practical problems he may
encounter and the risks undertaken if the defense is
unsuccessful.  Id. at 511-12.  Further, the trial judge must
inform the defendant that the trial will be governed by the rules
of criminal procedure and the rules of evidence and that no
exceptions will be made on account of defendant's pro se status.
Id. at 512.  Finally, the trial judge should inform the defendant
that self-representation is almost always foolish.  Ibid.  The
searching inquiry anticipated by Crisafi gives the trial judge an
opportunity to engage defendant in an extended discussion which
should allow the trial judge to assess the defendant's experience
with the criminal justice process, his general level of
intelligence and possibly any emotional or psychological
impediment to a knowing and intelligent waiver.  Id. at 511.

    The searching inquiry required by Crisafi is based on the
standard set forth by the Supreme Court of the United States in
Faretta and other cases.  For instance, the Crisafi court stated
that an on-the-record inquiry should make the defendant "aware of
the dangers and disadvantages of self-representation, so that the
record will establish that 'he knows what he is doing and his
choice is made with eyes open.'"  Crisafi, 128 N.J. at 510
(quoting Faretta, 422 U.S. at 835).  Further, "[b]ecause of the
importance of trial counsel, the United States Supreme Court has
'imposed the most rigorous restrictions on the information that

16

must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial.'" Crisafi, supra (*quoting* Patterson v. Illinois, 487 U.S. 285, 298 (1988)).  The Supreme Court of the United States has held that:

> To be valid such waiver [of trial counsel] must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.  A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all circumstances under which such a plea is tendered.

Von Moltke v. Gillies, 332 U.S. 708, 724 (1948)(plurality opinion).

As noted above, the appellate court applied the standards set forth in Crisafi, which plainly adhere to the federal standards enunciated by the Supreme Court in Faretta.  The court then determined that the trial judge conducted a thorough and searching inquiry and that Stepney waived his right to counsel knowingly and intelligently.

This Court's review of the relevant transcripts pertaining to the state courts' inquiry of Stepney is consistent with the findings of the state court.  The state courts' inquiry met the applicable federal standards with respect to a knowing waiver of counsel and Stepney clearly made a knowing and intelligent waiver.  There is no indication that the state courts

17

unreasonably applied established federal law in reaching its decision, or that the state court decision was based on an unreasonable application of the facts in light of the evidence presented at trial. Stepney has not demonstrated that the state court opinion, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. <u>Matteo</u>, 171 F.3d at 891. Accordingly, this first claim for habeas relief is denied.

B.  <u>Prosecutorial Misconduct During Cross-Examination</u>

Next, Stepney claims that the prosecutor's cross-examination of him during trial was improper. Stepney alleges that the prosecutor's suggestion during cross-examination that Stepney failed to report income in addition to what was alleged in the indictment constituted "other crimes" that never resulted in a conviction, in violation of N.J.R.E. 608 and 609. Such inflammatory evidence prejudiced the jury against him. Further, the trial judge overruled the objection by co-defendant's counsel.

The respondents argue that the cross-examination was proper because it sought to impeach Stepney's credibility on the very defenses he raised at trial. The State further contends that even if the cross-examination was improper, the error was harmless.

18

This issue was raised on direct appeal.  Stepney principally relied on state case law and the New Jersey rules of evidence, namely, N.J.R.E. 609.  The Appellate Division found Stepney's argument to be "without sufficient merit to warrant discussion in a written opinion."

Habeas review of a claim based on prosecutorial misconduct is limited to determining whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  Smith v. Phillips, 455 U.S. 209, 219 (1982).  If it does not infect the entire trial, misconduct alone is not enough to warrant a new trial.  Id. at 220.  "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments [or conduct] standing alone, for the statements or conduct must be viewed in context."  United States v. Young, 470 U.S. 1, 11 (1985).

However, the U.S. Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor – indeed,
> he should do so.  But, while he may strike hard blows,
> he is not at liberty to strike foul ones.  It is as
> much his duty to refrain from improper methods
> calculated to produce a wrongful conviction as it is to
> use every legitimate means to bring about a just one.

> ... Consequently, improper suggestions, insinuations,
> and, especially, assertions of personal knowledge are
> apt to carry much weight against the accused when they
> should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).

"Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

In this case, Stepney claims that during the prosecutor's cross-examination of Stepney, he referred to other specific instances where Stepney failed to report income to prove Stepney "characteristically" lied on welfare applications. These questions as to other instances of failure to report income were directly related to the charges against Stepney, that he intentionally deceived Social Services by not including material information on his wife's income. The questions on cross-examination bore specifically on issues that Stepney raised in his defense. For instance, Stepney asserted at trial that he always reported all of his earnings and his wife's earnings. Thus, the prosecutor's questions were simply intended to explore Stepney's assertions in this regard, by questioning him on the very same factual suggestions that Stepney injected into the case. In short, the prosecutor's cross-examination amounted to

nothing more than an attack on the theory advanced by the
defense.  The defense having been raised, the prosecutor was free
to question its validity.

This Court finds that the prosecutor's cross-examination
did not have the capacity on their own to so infect the trial
with unfairness as to make the resulting conviction a denial of
due process.  The prosecutor's questions simply challenged the
defense raised by Stepney himself.  Moreover, it should be noted
that there is no prejudice to petitioner where he himself
introduced the subject matter of the allegedly offensive
questions on cross-examination into trial.  Stepney first offered
evidence that Social Services had investigated him for failure to
report the record store business, and his representation that he
had custody of his nieces.  Further, the prosecutor's questions
were minimal in contrast to the many days of full testimony
during trial,[6] and were largely cumulative considering that
Stepney first raised the issues.  Therefore, the Court finds no

---

[6]  In his traverse, Stepney appears to raise a new issue
concerning questions asked on cross-examination about possible
"under the table" income that might not have been reported.
Stepney responded that he never had any other income during the
relevant period other than what was reported.  This inquiry
consisted only of four questions, covering (with Stepney's
responses and objections on the record) 1½ pages out of the
entire cross-examination which spanned over 100 pages in the
trial transcript.  The Court finds these limited questions to be,
at most, harmless error.  The questions had no potential on their
own to so infect the trial with unfairness as to make the
resulting conviction a denial of due process.

error of constitutional dimension; it was nothing more than a fair, but probing inquiry into the substance of Stepney's defense.  The state court decisions were not contrary to, and did not involve an unreasonable application of, clearly established federal law; nor were they based on an unreasonable determination of the facts in light of the overwhelming testimonial evidence presented in the state court proceedings.  Accordingly, this claim will be denied.

C.  Exclusion of Exculpatory Evidence at Trial

     Stepney next argues that the trial court erred in excluding certain exculpatory evidence, namely, the testimony of Julia Bray and defense exhibit DSA-18, a June 16, 1993 letter.

     Generally, matters of state law and rules of procedure and evidence are not reviewable in a federal habeas petition.  The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

     Federal courts must afford the states deference in its determinations regarding evidence and procedure.  See Crane v. Kentucky, 476 U.S. 683, 690 (1986)("we have never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability, even if the defendant would prefer to

see that evidence admitted").  It is well-established that "a
state court's misapplication of its own law does not generally
raise a constitutional claim.  The federal courts have no
supervisory authority over state judicial proceedings and may
intervene only to correct wrongs of constitutional dimension."
Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations
omitted), cert. denied, 522 U.S. 1109 (1998).

However, evidentiary rulings may violate due process when
the petitioner "was denied fundamental fairness at trial."
Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22,
1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer,
19 F.3d 110, 120 (3d Cir. 1994), cert. denied, 513 U.S. 881
(1994); Lisenba v. California, 314 U.S. 219, 228, 236
(1941)(holding that state court's evidentiary rulings may form
the basis for habeas relief when they "so infused the trial with
unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law
is a fundamental defect which inherently results in a complete
miscarriage of justice or in an omission inconsistent with the
rudimentary demands of fair procedure."  Hutchins, 1991 WL 167036
at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d
Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations
omitted).  The Supreme Court has further stated that "an
otherwise valid conviction should not be set aside if the

23

reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  An error is not harmless if "it aborts the basic trial process or denies it altogether."  Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S. 570, 578 n.6 (1986)).

In this case, the Court finds that the state court's evidentiary ruling with respect to the exclusion of Julia Bray's testimony at trial did not violate Stepney's right to due process.  Mrs. Bray was a member of the church attended by Stepney and his wife.  Stepney proffered that Mrs. Bray would testify that Lethia Stepney gave a "testimonial" at church thanking God for her job.[7]  Mrs. Bray also stated that Mrs. Young, an employee at Social Services, usually attended church, but Mrs. Bray did not testify that Mrs. Young was present at the service when Lethia Stepney made her testimonial.  The court excluded the testimony as hearsay.  While the testimony may not have constituted hearsay, as determined by the trial court, the respondents argue it was not relevant on the issue of notice of employment, and therefore, properly excluded.  This Court agrees.

---

[7]  Lethia Stepney did not specifically identify the job for which she was grateful.  However, it was the unreported income from Lethia's employment at the Gourmet Kitchen and/or Foodtown that was the basis of the criminal charges in this action.

First, there is no evidence that Mrs. Young was present at the time the testimonial at church was given by Lethia Stepney. Mrs. Young never testified that she heard the testimonial. Second, and more significantly, Lethia Stepney's testimonial does not constitute legal notice. A welfare applicant must affirmatively report income, including the type and source of employment, hourly wages or salary, etc. directly to Social Services. It is not sufficient notice if an employee finds out about unreported income of a beneficiary through some coincidental personal contact. Here there was no proffer that Mrs. Bray's testimony would have provided the relevant evidence that Lethia Stepney identified her job and income at church in Mrs. Young's presence. Thus, the Court finds no error in the trial court's exclusion of the testimony at trial.

Moreover, Stepney suffered no prejudice from the exclusion of this evidence. While Mrs. Bray's testimony may have been excluded, Lethia Stepney testified at trial that she gave testimony at church about her job in Mrs. Young's presence. Thus, the substance of Mrs. Bray's testimony was presented to the jury by Mrs. Stepney's direct testimony. Since Mrs. Stepney was acquitted of all charges, it would appear that the jury accepted her testimony in this regard. However, Lethia Stepney's testimonial is, in fact, irrelevant to Stepney's obligation to report all family income to Social Services since he assumed

25

responsibility for all formal contacts with Social Services and the requirement to report income, which he failed to do.

Next, Stepney takes issue with the trial court's exclusion of a one-page letter from Mrs. Young, dated June 16, 1994, which included application forms prepared by Mrs. Young.  The court excluded the letter because it had not been provided in discovery, despite repeated reminders to Stepney that he had to follow the rules of the court, including the discovery rules. In fact, at the June 15, 1998 pretrial conference, the trial judge specifically advised Stepney that if he had any documents which he intended to use at trial, Stepney would have to provide copies of them to the prosecutor, otherwise he would not be able to use them at trial.  Stepney acknowledged the warning.  (4T, 9:9-19). The court again reminded Stepney of his obligation to comply with the rules of the court, which included his obligation to provide documents and a list of witnesses intended to be called at trial to the prosecutor, or the court would exclude them.  (9T, 9:8-15; 11:2-3).  Finally, on the day of trial in which Stepney attempted to introduce the June 16, 1994 letter into evidence, and which letter had not been provided to the State, the Court refused to admit the letter, and admonished Stepney as follows:

> You see the point here, Mr. Stepney, and I told you last
> week before we began this case, anything you wanted to use
> in this case had to be provided to the Prosecutor and to Mr.
> Jonathan before you used it.  This morning you came in and
> we actually copied papers for you.  I had my staff do it.
> Now you cannot hold back things that you are going to use on

26

testimony.  That is not the way the rules work.  Do you
understand that I can't have you bring it in here.  It is
part of the continuing obligation of discovery.

This morning I assume that you were -- I gave you the leeway
to give Mr. Arnold everything you were going to use today
and you didn't give it to him, obviously.  How many more
things are you going to use in your testimony or in this
case that have not been provided to Mr. Jonathan or Mr.
Arnold?  That is the problem here.

(12T, 18:20-19:10).

In reviewing the record, this Court does not find the trial

court's exclusion of the June 16, 1994 letter to have been an

abuse of discretion, nor did the exclusion of this letter

constitute a denial of due process.  The Court notes that

although the letter itself was excluded, the documents included

with the letter, the application forms at issue, were admitted

into evidence.  Further, the letter itself was not exculpatory

and did not materially corroborate Stepney's defense at trial.

There was no dispute that the renewal application referenced in

the letter was completed by Mrs. Young.  Mrs. Young testified

that Stepney had arrived at the interview with her without having

completed the renewal application, so she filled it out in his

presence.  The only impact of the excluded letter itself was on

Mrs. Young's recollection as to the date she met with Stepney and

filled out the form.  The letter itself does not prove that Mrs.

Young filled out the form outside of Stepney's presence or that

Stepney signed it before it was completed.  In fact, the letter

tends to prove the contrary because it instructed Stepney to

complete the form and sign it before returning it to Mrs. Young. Thus, the Court finds no prejudice to Stepney as a result of this evidentiary ruling by the trial court.

Finally, this Court concludes that the trial court committed no errors of a constitutional dimension with respect to both evidentiary rulings at issue, and a review of the whole record demonstrates that the trial process was fundamentally fair. Further, there is no showing that the state court evidentiary determinations "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>Williams</u>, 529 U.S. at 412-13. Accordingly, this ground for a writ of habeas corpus will be denied.

D. <u>Accomplice Liability Issue</u>

In his fourth ground for habeas relief, Stepney asserts that the "State Court arbitrarily and unreasonably decided that defendant could be tried when the statute does not condemn the defendant's conduct." Stepney argues that he was "charged under a theory of conspiracy but both conspirators were acquitted of the conspiracy." Further, the court "allowed defendant's conviction to stand as an accomplice without notice to the

28

defendant as to his specific liability as principle [sic] or accomplice" and that the court failed to instruct the jury on accomplice liability.  (Petition, ¶ 12D).

The State contends that this claim was not exhausted in the state courts, and alternatively, that the claim is without merit. The jury acquitted Stepney of the conspiracy to commit theft by deception charge.  The jury also did not find Stepney guilty as an accomplice or as a co-conspirator.  Rather, the jury found Stepney guilty only of theft by deception based on the charge that he obtained AFDC benefits and/or food stamps by purposeful deception.

This Court finds Stepney's claim to be completely baseless, since petitioner was acquitted of conspiracy and accomplice liability as charged.  Even if it was error not to charge the jury on accomplice liability, the lack of such a charge did not affect the outcome of the trial.  Stepney was acquitted of the conspiracy charge and there was no finding of accomplice liability.  Further, there was sufficient evidence at trial to support the jury's finding of guilt with respect to the theft by deception charge.  Thus, at most, petitioner's claim of fault with respect to the accomplice liability issue is based on omission, which the Supreme Court has stated is less serious than a misstatement of the law.  See Henderson v. Kibbe, 431 U.S. 145, 155 (1977)("An omission, or an incomplete instruction, is less

likely to be prejudicial than a misstatement of the law"). Stepney fails to point to a federal requirement that a specific instruction was required in this instance; nor can he demonstrate that the lack of the proposed charge deprived him of a defense which federal law provided to him.  <u>Johnson v. Rosemeyer</u>, 117 F.3d 104, 110 (3d Cir. 1997).  There was simply no prejudice to petitioner despite the absence of the accomplice liability charge.

Therefore, this Court concludes that the absence of a jury instruction on accomplice liability did not so infect the trial with unfairness as to violate Stepney's due process rights. There is no discernable violation of a federal constitutional right with respect to this claim.  Accordingly, this ground for relief will be denied for lack of merit.

E.  <u>Petitioner Denied Compulsory Process to Call Witnesses</u>

Finally, in his last claim, Stepney contends that the trial court denied him the right to call witnesses at trial. Specifically, these witnesses included Silisa Campbell and Vernon Wilson.  Although petitioner did not raise this claim during state court review, the Court finds that there is no merit to the claim, and that it involves a state evidentiary and procedural

ruling not subject to habeas review.[8]  See this Opinion, supra, at pp. 22-23.

First, as pointed out by the respondents, Stepney agreed that he would not call these witnesses.  When specifically asked by the trial court as to whether Stepney intended to call certain witnesses, Campbell and Wilson included, Stepney affirmatively responded that he would not be calling them.  (9T, 12:20-13:23). Thus, the trial court did not arbitrarily exclude these witnesses.

Second, Stepney has not demonstrated an error of constitutional dimension.  These witnesses had been excluded on the basis that Stepney had violated his obligation under the discovery rules which is controlled by state law.  Furthermore, this Court's review of the whole record demonstrates that the

---

[8]  Stepney also belatedly attempts to add several other witnesses, Mr. Harvey and co-defendant's counsel Kenneth Jonathan, in this claim.  These witnesses were added to his claim by way of Stepney's traverse, filed on November 19, 2004, well after the limitations period under § 2244(d) had expired. Because these witnesses were not included in the initial petition, and are not necessarily connected to the other witnesses at issue in this case, Stepney cannot now amend his petition under Fed.R.Civ.P. 15(c) since it would be beyond the statute of limitations in a § 2254 petition.  See Mayle v. Felix, 125 S.Ct. 2562 (2005)(any amended petition filed after the one-year federal habeas limitations period that includes claims not arising out of the "conduct, transaction, or occurrence" set forth in his original petition would not "relate back" to the date of the original petition under Fed.R.Civ.P. 15(c). Moreover, as to the witness Harvey, Stepney had agreed that he would not call him as a witness at trial.  The other proposed witness was counsel to Stepney's wife.

trial process was fundamentally fair and there was no error, harmless or otherwise.  Therefore, this last ground for habeas relief is denied because Stepney has failed to show a denial of a federal constitutional right.

V.  <u>CERTIFICATE OF APPEALABILITY</u>

This Court next must determine whether a certificate of appealability should issue.  <u>See</u> Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

<u>**CONCLUSION**</u>

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.  An appropriate Order follows.

```
_____s/_____
```
STANLEY R. CHESLER
United States District Judge

DATED: December 23, 2005